IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 3: 24-13J |
| | ) | |
| KENNETH BEE | ) | |

**KENNETH BEE'S MEMORANDUM IN AID OF SENTENCING**

Kenneth Bee is a 55-year-old man who has worked his entire adult life. He has impaired intellectual abilities and was placed in special education during his school years, but he has not let that deter him. As his father states in his letter to this Court:

> Even with his learning disability, Scotty has worked hard all his life and accomplished more than I ever thought he would. He has lived on his own, held steady jobs, and taken care of himself without coming to me for financial help. As his father, that has always made me proud.

*See* Exhibit A (Letter from Kenneth E. Bee).

Mr. Bee, however, lived with extreme shame and remorse. When law enforcement executed a search warrant of his home in 2022, he voluntarily spoke to them and admitted to looking at child pornography. He also admitted to the offense conduct underlying counts one through three of the indictment – a secret he had hidden for approximately 20 years.

After being charged federally, Mr. Bee entered a guilty plea, and he will be sentenced on May 4, 2026. He respectfully requests that this Court impose a sentence of fifteen years; the factors set forth in 18 U.S.C. § 3553(a) support this request.

1

## I.   APPLICATION OF 18 U.S.C. § 3553(a) COMPELS A SENTENCE BELOW THE ADVISORY GUIDELINE RANGE.

Section 3553(a) provides that, in addition to the applicable guideline range and Sentencing Commission policy statements, district courts are required to consider the history and characteristics of the defendant, the nature and circumstances of the offense, the kinds of sentences available, the need to avoid unwarranted disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to victims of the offense.  18 U.S.C. § 3553(a)(1), (3), (4),(5),(6), and (7).

In addition, under 18 U.S.C. § 3553(a)(2) district courts must impose a sentence "sufficient, but not greater than necessary" to comply with the need for the sentence:

(A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B)   to afford adequate deterrence to criminal conduct;
(C)   to protect the public from further crimes of the defendant; and
(D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Here, these factors weigh in favor of a substantial variance below the advisory guideline range, to a sentence of fifteen years.

### A.   Mr. Bee's History and Characteristics

Mr. Bee has a very close relationship with his father, Kenneth E. Bee. Mr. Bee's father served in the Air Force and later moved his family to Pennsylvania where he found work as a welder. The elder Bee eventually opened a gun shop in Saltsburg, Pennsylvania. Now retired, he lives in South Carolina with his wife, Lisa Santa

2

Maria. She describes the relationship Mr. Bee has with his father in her letter to this Court:

> From the beginning, it was clear that he and his father shared a very close bond and genuinely enjoyed each other's company. Ken Jr. often helped his father with projects, including home repairs and vehicle maintenance, and the two of them worked well together in a way that was natural and easy to see.
>
> We spent holidays together over the years, even after we moved to South Carolina. Ken Jr. regularly spent much of his vacation time with us here, fishing and boating with his father and helping with projects around the house. Whatever the task, they seemed to enjoy doing it together.

*See* Exhibit B (Letter from Lisa SantaMaria). Ms. SantaMaria further describes how both father and son developed an interest in cooking and baking. "They each kept sourdough starters and would compare notes and results from afar. When Ken Jr. came to visit, the three of us often spent time together making bread, sausage, and other foods. Those visits were full of activity, laughter, and a real sense of family." *Id.*

Mr. Bee's mother was an alcoholic, which caused strife in the home. In 1995, Mr. Bee's parents separated. His mother passed away in 2017, but Mr. Bee cared for her before she died. As Mr. Bee's sister explains in her letter to this Court:

> When our parents divorced, my brother stepped into a supportive role for our mother. He made it a priority to help her with errands, maintain her home and even mow the lawn and hang Christmas lights. He remained by her side faithfully until her passing in 2017. His loyalty and devotion during that time spoke volumes about his character at his core.

*See* Exhibit C (Letter from Christina Kline).

Throughout his adult life, Mr. Bee was gainfully employed – even while he helped his ill mother or maintained a close relationship with his out-of-state father. Most recently he worked at Shelly Drilling, where he had been employed for

approximately fourteen years. *See* PSR at ¶72. Further, as referred to above, Mr. Bee was able to hold a job and support himself despite reading deficiencies and limitations that resulted in his being placed in Special Education. His sister writes:

> Growing up, my brother faced challenges, including being tested and placed in Special Education, and the stigma that accompanied that classification. Despite those early obstacles he never allowed them to define him. He was even able to compete in the Special Olympics. Instead, his challenges helped his resilience and compassion be shaped for others.

*See* Exhibit C. His sister also provided a copy of a page from Mr. Bee's yearbook that depicts his participation in the school's Special Olympics team.



Row 1: Holly Jo Brown, Brenda Auen, Mrs. Fello—*Sponsor.* Row 2: Scott Bee, Joey Baker, Jim Horner, Sam White, Daryl McKendrick, Bob Brown.

Before Mr. Bee graduated from high school, he took the Armed Services Vocational Aptitude Battery (ASVAB). His test scores were woefully low and did not meet the minimum requirements for any branch of the military. While Mr. Bee attended Williamsport Community College after graduation, he was studying a vocation – carpentry – and he had hoped his limitations would not thwart his goals. Unfortunately, he was unable to pass his first year of studies. His difficulties reading remain. He even informed law enforcement prior to submitting to a polygraph examination that he was unable to read a knowing consent form.

Mr. Bee's dedication to working hard has continued even after his detention for the instant case. After being detained in the Cambria County Prison, Mr. Bee secured a job in the kitchen. He reports that everyone loves his biscuits.

In addition to working, Mr. Bee has also tried to use this period of pretrial detention to strengthen his faith. Throughout his interviews with law enforcement, Mr. Bee repeatedly stated that he did not understand why he engaged in this conduct. He stated that he knew it was wrong. He has turned toward his faith and has tried to find answers. He and sister discuss The Bible together, and Mr. Bee prays. He wants help, and he is committed to doing whatever he can so that he never reoffends.

Mr. Bee's caring nature, echoed throughout the letters from his family, is extraordinary. Whether it is helping a stranger on the side of the road in the middle of the night or giving up his Saturdays to attend community events sponsored by his

father's gun shop, *see* Exhibit A, Mr. Bee is "dependable" and "compassionate," *see* exhibit C.

For all these reasons, Mr. Bee's history and characteristics demonstrate that his remorse is genuine, his commitment to improve himself and do the right thing is fully ingrained in him, and his prognosis for treatment is positive. As a result, a sentence of fifteen years is sufficient to meet the goals of sentencing.

## B.    The Facts Of The Offense And The Need To Avoid Unjust Sentencing Disparities

Here the offense conduct is serious. The offenses were crimes against children, and Mr. Bee makes no excuse. He is fully aware of the serious nature of his offenses. A fifteen-year sentence is an incredibly lengthy period of time that will result in his imprisonment until well within his 60's. This will meet the goals of reflecting the seriousness of the offense and providing both specific and general deterrence.

As horrific as the conduct in this case was, production cases often present with even more aggravating factors that are not present here. The produced videos were never distributed. The production conduct did not reveal Mr. Bee's genitalia or penetration. The production incidents were isolated, not pervasive, and they did not involve force, violence, threats, intimidation, or humiliation. The production incidents did not involve manipulation or grooming; Mr. Bee did not persuade the minor to engage in such conduct. He did not administer any drugs or alcohol to the minor. He did not reward the child for engaging in sexually explicit activity. He did not show the minor any pornography or in any way try to normalize his behavior. While still

6

serious, the offense conduct lacks the aggravating factors that warrant sentences well over the fifteen-year minimum.

A sentence of fifteen years is on par with other production cases in the Western District of Pennsylvania where 15 years' imprisonment was imposed. *See United States v. Heinrich*, 17-013-DSC, Doc Nos. 58, 148 (imposing Rule 11(c)(1)(C) agreement of 180-month sentence where victim was 4 years old, defendant was like an uncle, and images depicted the minor's genitalia, buttocks, and the defendants hand separating apart her buttocks and vaginal area; both stills and images were discovered from multiple days; in one video he is heard telling her to remain still and that she is pretty); *United States v. Hartman*, 17-001-MRH, Doc. Nos. 47 at Ex. 1, 63, 71 (imposing sentence of 180 months for sex trafficking and dismissing production charge where defendant was sex trafficking a 14-year-old girl he supplied with heroin and took responsibility for conduct underlying production counts, which involved uploading images of minor's genitalia to the internet site used to traffic her); *United States v. O'Donnell*, 18-080-AJS, Doc. Nos. 91, 95 (imposing sentence of 180 months where defendant surreptitiously produced images of nude 12-year-old girl and edited them to focus on her genitalia and attempted to contact her after entering a guilty plea); *United States v. Gourley*, 20-253-WSS, Doc. Nos. 70, 75 (imposing Rule 11(c)(1)(C) agreed upon sentence of 180 months where defendant was in a position of trust; sexually, mentally, and emotionally manipulated the child, and violated the child over an extensive period of time); *United States v. Bates*, 21-274-NR Doc. Nos. 134, 142 (imposing Rule 11(c)(1)(C) agreed-upon sentence of 180 months where

defendant paid a minor for sexually explicit images of that minor on multiple occasions and attempted to obtain images of the minor's younger sibling as well); *see also United States v. Piper*, 17-054-MRH, Doc. Nos. 55, 60 (imposing sentence of 140 months for distribution after production count was dismissed where defendant, who had a prior juvenile adjudication involving child pornography, was charged with grooming an 11-year-old boy to take 20 to 30 pictures of his genitalia, including an images that depicted an adult male penis touching the child's penis, and uploading them to social media promoting incest).

The facts here are also less serious than cases where a sentence in excess of 180 months was imposed. *See United States v. Kundrat*, 17-169-JFC, Doc. Nos. 46, 53 (imposing sentence of 206 months where defendant drove to Ohio to meet 14-year old girl, video-taped their sex acts, and listed them for sale over the internet); *United States v. Switzer*, 18-296-AJS, Doc. Nos. 30, 37 (imposing 210-month sentence where defendant produced at least 13 images of his sex acts with a 4-year-old minor); *United States v. Kolonis*, 20-146-RJC, Doc. Nos. 89, 93 (imposing Rule 11(c)(1)(C) agreed-upon sentence of 240-months in sextortion case where defendant threatened multiple minor victims to create sexually explicit and extremely graphic images of themselves); *United States v. Smith*, 20-346-WSS, Doc. Nos. 87, 92 (imposing 210-month sentence in sextortion case where defendant threatened multiple minor victims to create sexually explicit images of themselves); *United States v. Cerasi*, 21-479-AJS, Doc. Nos. 47, 52 (imposing 192-month sentence where defendant created images of sexually abusing a child who was dependent on him for care).

A fifteen-year sentence, thus, reflects the facts and circumstances of the case and avoids unwarranted disparities.

### C.     **The Advisory Guideline Range**

Often times the advisory guideline range reflects relevant factors concerning the nature and circumstances of the offense. Here, however, the guideline range is so inflated that it fails to distinguish this case from countless others. While child pornography offenses are serious, the fact that most enhancements apply to almost every child pornography case skews the guideline ranges so high that they fail to reflect the full statutory range passed by Congress. In addition, the guidelines apply in this case so as to double count some of the offense conduct. Specifically, applying the 3-point multiple count enhancement, *see* PSR at ¶¶ 41-44, and the 5-level repeat and dangerous sex offender enhancement under U.S.S.G. §4B1.5(b)(1), counts the same conduct twice, specifically, the production of the images.

Further the astronomically high guideline range in this case illustrates the limitations of the guidelines. They utterly fail to distinguish this case in any meaningful way from other cases that fall within the same guideline range. *See, e.g., United States v. Straitiff*, 22-122-WSH, Doc. Nos. 50, 55 (where defendant admitted to sexually assaulting four minors related to him and under his care when they were as young as three years old, forcing them to watch videos of the assaults to succumb to additional assaults and where each of the eleven counts of conviction resulted in a 4-level increase under §2G2.1(b)(4) because the produced images depicted sadomasochism or other depictions of violence) or *United States v. Oshensky*, 20-010-

SLH, Doc. Nos. 69, 71 (same guideline range even though defendant fell into criminal history category II and where defendant videotaped his sexual assaults of multiple prepubescent boys placed in his home for foster care over the course of years).

Since its decision in *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court has clarified the procedure sentencing courts must follow when embarking on the serious task of sentencing people. It has also clarified the role of the guidelines as advisory and noted that with certain offenses, the Guidelines Manual may be less relevant than it would be for other offenses. *See Kimbrough v. United States*, 552 U.S. 85, 110 (2007).

The Guidelines in this case provide for life but are capped at the statutory maximum. As a result, the range, by falling at the highest possible range, fails to reflect the fact that Mr. Bee took responsibility for his offense. It fails to reflect his unique characteristics, his remorse, his amenability for treatment. It fails to recommend a sentence that will promote repayment of restitution by recommending that he remain incarcerated through, at the very least, all of his possible working years. It results in unwarranted disparities. And, it fails to distinguish his case from cases with additional aggregating factors.

As a result, this Court should vary below the advisory guideline range.

### F.    **Purposes of Sentencing**

A fifteen-year sentence comports with the purposes of sentencing, as set forth in § 3553(a)(2). Indeed, consideration of the first enumerated purposes of sentencing

-- to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense and to afford adequate deterrence to criminal conduct -- weighs in favor of imposing a fifteen-year sentence. This is a serious sentence for a serious offense, and imprisonment beyond 15 years is greater than necessary to meet those purposes of sentencing. "Respect for the law is promoted by punishments that are fair, however, not those that simply punish for punishment's sake." *United States v. Stern*, 590 F.Supp.2d 945, 956-57 (N.D. Ohio Dec. 19, 2008) (emphasis in original, citations omitted). A sentence that is too high promotes disrespect for the law just as a sentence that is too low. *Cf. id.* ("There is no reason to believe that respect for the law will increase if a defendant who deserves leniency is sentenced harshly any more than there is reason to believe that respect for the law will increase if a defendant who deserves a harsh sentence receives a slap on the wrist.") (citations omitted). *See also United States v. Ontiveros*, 07-CR-333, 2008 WL 2937539, at *3 (E.D.Wis. July 24, 2008) ("[A] sentence that is disproportionately long in relation to the offense is unjust and likewise fails to promote respect [for the law].").

Additionally, the shame and collateral consequences, such as sex offender registration laws, attached to child pornography offenses act as a further deterrent in ways that are unlike other types of offenses. Thus, leniency of the overall term of imprisonment does not alleviate the stigma attached to this offense and the life-altering consequences of a conviction for this type of offense, both of which act as punishment and as a general deterrent to others who may contemplate such an

offense. Consequently, consideration of this factor weighs in favor of sentencing Mr. Bee to a fifteen-year sentence.

Consideration of the need to protect the public from future crimes of Mr. Bee weighs in favor of sentencing him to fifteen years for the reasons set forth throughout this sentencing memorandum. Indeed, Mr. Bee has demonstrated remorse, disgust with himself, and a desire for treatment.

Finally, with respect to recidivism, this Court should note that the fact that Mr. Bee will be required to register as a sex offender and will likely have conditions imposed upon him during supervision that will limit and/or monitor computer access and being around minors. All of these factors will further decrease the likelihood of recidivism; thus, a term of imprisonment beyond fifteen years is not necessary to achieve this goal of sentencing.

Consideration of the remaining purposes of sentencing -- to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner – does not even weigh in favor of a term of imprisonment here because they can be fulfilled in the community.

Because a sentence of fifteen years sufficiently meets all the goals of sentencing set forth in Section 3553(a)(2), consideration of this factor weighs in favor of imposing such a sentence. Anything longer would be greater than necessary to meet these goals of sentencing.

## CONCLUSION

WHEREFORE, Mr. Bee respectfully requests that this court impose a sentence of fifteen years.


Respectfully submitted,


*__s/ Linda E. J. Cohn__*
Linda E. J. Cohn
Assistant Federal Public Defender